FILED

SEP 2 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN E. ROBINSON<br>14608 Debenham Way<br>Bowie, Maryland 20721<br>TEL: (301) 390-2386<br><br>　　Plaintiff,<br><br>　　v.<br><br>MARGARET SPELLINGS<br>in her official capacity as<br>SECRETARY OF EDUCATION<br>U.S. Department of Education<br>Room 7W301<br>400 Maryland Avenue, S.W.<br>Washington, D.C. 20202-1510<br>TEL: (202) 401-3000<br><br>　　Defendant. | Case: 1:07-cv-01731<br>Assigned To : Roberts, Richard W.<br>Assign. Date : 9/27/2007<br>Description: Employ. Discrim.<br><br>**JURY ACTION** |

COMPLAINT FOR REVIEW OF A DECISION
BY THE MERIT SYSTEMS PROTECTION
BOARD IN A MIXED CASE AND FOR RELIEF
FROM DISCRIMINATION IN FEDERAL
<u>EMPLOYMENT</u>

I.   <u>NATURE OF CLAIMS</u>

1. This is an action seeking review of a final decision of the Merit Systems Protection Board ("MSPB" or "Board") in a "mixed case" pursuant to 5 U.S.C. § 7703((b)(2) and alleging discrimination on the bases of race (African American) and reprisal in violation of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e **et seq**.

2. Plaintiff claims, first, that the Initial Decision of the Board on her appeal of the defendant's constructive denial of her Within Grade Increase (WIGI) which affirmed that denial and which found that Plaintiff had not proven her affirmative defenses of discrimination, retaliation, harmful procedural error and violations of law and regulation is not supported by substantial evidence.

3. Plaintiff claims, second, that because of her race (African American) and in reprisal for her allegations of discrimination, defendant constructively denied her WIGI and took other adverse actions against her. Specifically, Plaintiff claims that because or her race (African American) and in reprisal for her claiming discrimination, defendant placed unsubstantiated negative comments in her performance appraisal (Education Department Performance Appraisal System or "EDPAS") for rating period May 1, 2005, through April 30, 2006; that defendant gave her a "minimally successful" rating for Critical Element III "Management and Leadership" in her EDPAS rating for rating period May 1, 2005, through April 30, 2006; that defendant applied the EDPAS perfor-

mance standards to her in a different manner than they were applied to her white colleagues; that she was not given the required mid-year progress review; that she was not provided feedback or training during rating period May 1, 2005, through April 30, 2006, to assist her in improving her allegedly unsatisfactory performance; and that defendant constructively denied her WIGI due on or about June 26, 2006. As a result Plaintiff claims retroactive granting of her WIGI due on or about June 26, 2006; retroactive back pay plus interest; compensatory damages; and attorneys' fees and costs.

II. **JURISDICTION AND VENUE**

4. This Court has jurisdiction to review a final decision of the Merit Systems Protection Board ("MSPB" or "Board") in a "mixed case" pursuant to 5 U.S.C. § 7703((b)(2).

5. This Court has jurisdiction over Plaintiff's claims of discrimination and retaliation pursuant to 42 U.S.C. § 2000e-16(c).

6. Venue is appropriate in this Court because defendant's place of business is located in the District of Columbia; the material acts complained of occurred in the District of Columbia; and the employment records and

agency records are maintained in the District of Columbia.

## III. **DESCRIPTION OF THE PARTIES**

7. Plaintiff is an African American female. Plaintiff is a citizen of the United States and a resident of the state of Maryland. At all times relevant to this Complaint, Plaintiff was employed by defendant.

8. Defendant Margaret Spellings is the Secretary of Education and is sued in her official capacity only. As head of the federal department in which Plaintiff is employed and in which the actions complained of herein arose, defendant is the only appropriately named defendant. 5 U.S.C. § 7703(b)(2); 42 U.S.C. § 2000e016©.

## IV. **STATEMENT OF FACTS**

9. Plaintiff received a Bachelor of Science degree in Education from Boston University in 1975; a Masters of Education in Special Education from Northeastern University in 1979, and a Masters of Science in Management with a speciality in Procurement and Contracts from the University of Maryland University College in 2002. Prior to joining the federal government Plaintiff was employed as a special education teacher and/or administrator in the Boston and District of Columbia public school systems and as an administrator in private contracting firms. Prior to joining the federal govern-

ment, Plaintiff held many supervisory positions, including during the period August, 1983, through August, 1985, when she served as Department Head of Special Education for a large Boston high school. In that position Plaintiff successfully supervised approximately 25 teachers, aides, psychologists and social workers, and was responsible for the individual educational plans for over 300 special education students.

10. Between October, 1998, and November, 2000, Plaintiff was employed by the Department of Defense Education Activity as a GS-1701-13 Education Support Specialist/Education Program Manager. From November, 2000, until June, 2005, Plaintiff was employed by the Department of Defense as a GS-0343-14 Program Analyst, in the Educational Opportunities Directorate/Military Community and Family Policy/Office of the Under Secretary of Defense for Personnel and Readiness working with DOD's Impact Aid programs. During her employment by the Department of Defense, Plaintiff's performance always was evaluated at the highest possible level.

11. Plaintiff's employment at the Defendant commenced on June 27, 2005, as GS-343-15 Supervisory Management and Program Analyst/Group Leader, Program Operations Group, Impact Aid Program, Office of Elementary and Secondary

Education, Department of Education. Plaintiff's supervisor was (and is) Catherine Schagh (white), also a grade 15. In addition to Plaintiff, there was (and is) a counter-part Group Leader, Marilyn Hall (white), also a grade 15 who supervises the Program Support Group. Ms. Hall also was appointed to the Group Leader position on or about June 27, 2005.

12. As a new supervisors Plaintiff and Ms. Hall were required to complete a one year probationary period from June 27, 2005, to June 26, 2006. The waiting period for Plaintiff's WIGI also was from June 27, 2005, to June 26, 2006. Plaintiff's appraisal cycle for her first year of employment was from May 1, 2005, through April 30, 2006. Defendant regulations required Plaintiff's supervisor and Plaintiff to develop performance standards (Education Department Performance Appraisal System or EDPAS) within 30 calendar days of Plaintiff assuming the position. In actuality, Plaintiff was given the EDPAS standards to sign on August 3, 3005, and she did not receive a copy of the signed EDPAS agreement until June 21, 2006.

13. Defendant's regulations required Plaintiff's supervisor to hold a mid-point review on or before November 26, 2006 - no more than 30 calendar days after the mid-point of the employee's appraisal cycle. Alternatively, if defendant

considered the mid-point review to be at the mid-point of the employee's actual period of employment, Plaintiff should have received a mid-point review on or before January 26, 2006. In late 2005 or early 2006, Plaintiff requested a mid-year evaluation but one was not held. Further, at no point prior to March 24, 2006, did Plaintiff's first-level supervisor, Ms. Schagh, initiate the progress review required to be held if she considered Plaintiff's performance to have fallen below the Fully Successful level. Ms. Schagh, however, did hold a mid-year progress review with Plaintiff's colleague, Marilyn Hall.

14. From the beginning of Plaintiff's employment as Group Leader, Ms. Schagh did not allow Plaintiff to perform the duties of her supervisory position independently. Ms. Schagh did not allow Plaintiff to hold staff meeting with her employees without Ms. Schagh's presence and Ms. Schagh did not allow Plaintiff to supervise her employees. On the other hand, Ms. Schagh did allow Ms. Hall (white) to perform her duties without Ms. Schagh's interference.

15. For most of November, 2005, through April, 1006, Ms. Hall was absent from the office on extended sick leave. Ms. Schagh was very generous to Ms. Hall in granting leave, allowing her to work from home, and allowing her to

supervise her staff from home despite the fact that agency regulations and/or policy do not allow supervisors to work from home on an extended basis. Indeed, Ms. Schagh personally supervised Ms. Hall's staff to ensure that the work of her group was accomplished. During this same time period Plaintiff's father, for whom she was the sole care-provider became extremely ill and was hospitalized on numerous occasions. Despite the fact that Ms. Schagh was aware that Plaintiff's father was hospitalized and required Plaintiff's attendance at the hospital, Ms. Schagh did not make the same generous allowances for Ms. Robinson's absences and/or the effects of her father's illness and subsequent death on Plaintiff.

16. In March, 2006, Ms. Schagh began interviewing some of Plaintiff's staff concerning any alleged problems with Plaintiff's supervision of them. Virtually all of Plaintiff's employees who were interviewed advised Ms. Schagh that they had no problems with Plaintiff's supervision of them. Ms. Schagh asked one member of Plaintiff's staff (Barbara Chase, African American, GS-13, Senior Program Analyst), if she were retiring in late March, 2006, because of Ms. Robinson's supervision. Ms. Chase stated she was not; that morale in the Impact Aid office had been terrible long before Plaintiff arrived; and that Plaintiff

was very professional and a very good supervisor. Ms. Schagh did not interview all of Plaintiff's subordinates, specifically one of her most senior employees (Peter Fuscass, white male) who was of the opinion that Plaintiff was a "wonderful" supervisor and "one of the best supervisors [he] had ever had, hands down." Ms. Schagh did not interview Ms. Hall's subordinates concerning Ms. Hall's supervision of them - or lack thereof.

17. On or about March 24, 2006, Plaintiff's supervisor orally advised Plaintiff that Ms. Schagh was placing Plaintiff on a 60-day "probationary period" until May 24, 2006, to improve her performance. Ms. Schagh did not give Plaintiff any formal notice concerning performance deficiencies nor did she issue Plaintiff a written notice of her intent to delay or deny her Within Grade Increase nor did she issue Plaintiff a notice of opportunity to improve or a performance improvement plan, nor, as noted above, did Ms. Schagh conduct a mid-point performance appraisal of Plaintiff's performance as required by Defendant's regulations. Further, Ms. Schagh never provided Plaintiff the reason(s) she did not provide a mid-point of Plaintiff's performance within the required time frame.

18. On May 24, 2006, Plaintiff submitted a list of her performance accomplishments to Ms. Schagh for Ms. Schagh's

use in preparing Plaintiff's EDPAS rating for the period June 26, 2005, through April 30 (or May 24), 2006. In her list of performance accomplishments Plaintiff spelled out in great detail her accomplishments under the "Management and Leadership" performance element. Ms. Schagh did not advise Plaintiff on or after May 24, 2006, concerning her determination with respect to the Acceptable Level of Competence (ALOC) determination affecting Plaintiff's WIGI due on June 26, 2006, but Plaintiff never received the WIGI. Effective June 26, 2006, Plaintiff successfully completed her probationary year as a supervisor and became a permanent supervisor.

19. On July 6, 2006, Ms. Schagh gave Plaintiff a "Minimally Successful" rating for the rating period May 1, 2005 (June 26, 2005) through April 30, 2006, based on alleged interpersonal and supervisory problems for which Ms. Schagh evaluated Plaintiff as "Minimally Successful" under Critical Element III "Management and Leadership."[1] Ms.

---

[1] It should be noted that the "Minimally Successful" rating given Plaintiff on July 6, 2006, is internally inconsistent. Ms. Schagh rated Plaintiff "Highly Successful" ("4") in the performance elements "Manage the monitoring and technical assistance activities of the Program Operations Group," "Willingly complete assigned share of office workload; adapt to changing assignments, priorities, and responsibilities," and "Attend and participate in Impact Aid Program staff meetings," but "Minimally Successful" for "Management and Leadership."

(continued...)

Schagh completely ignored Plaintiff's list of performance accomplishments in preparing the evaluation. Subsequently, Plaintiff met with her first and second level supervisors, Ms. Schagh and Ms. Lim, and asked if she would receive the WIGI due June 26, 2006. Plaintiff was advised that she would not. Plaintiff was not advised of her right to request reconsideration of the negative ALOC determination. At or about the same time Ms. Schagh determined that Ms. Hall had successfully completed her probationary year as a supervisor despite the fact that Ms. Hall had not been able to perform her supervisory duties due to her extended sick leave between November, 2005, and April, 2006, and Ms. Schagh rated Ms. Hall as "Fully Successful" in Critical Element III "Management and Leadership.

V. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

20. After timely initiating EEO counseling to begin pre-complaint EEO processing on March 6, 2006, and again on March 13, 2006, and again on March 20, 2006, with respect to Ms. Schagh's allegation that Plaintiff's performance as a supervisor was unacceptable, Plaintiff filed a timely formal complaint of discrimination and retaliation on July

---

1/ (...continued)

12, 2006, with respect to the "minimally successful" rating in Critical Element III; the denial of the WIGI; and related matters. Defendant conducted an investigation and Plaintiff timely requested a hearing before the Equal Employment Opportunity Commission (EEOC). On November 14, 2006, Plaintiff requested reconsideration of defendant's verbal denial of her WIGI on or about July 5, 2007. Defendant never responded to this request. The EEOC took jurisdiction over this matter on January 19, 2007. On January 22, 2007, Plaintiff timely filed an appeal of the denial of her WIGI with the U.S. Merit Systems Protection Board ("MSPB"). On January 29, 2007, Plaintiff filed a Motion to Amend and Consolidate with the EEOC to add an additional claim that defendant retaliated against her when on January 16, 2007, it gave her a second minimally successful rating for the rating period July 7, 2006, through November 7, 2006, and with respect to defendant's failure to hold a mid-year performance review for that rating period. On January 30, 2007, the MSPB issued an Acknowledgment Order with respect to Plaintiff's appeal of defendant's denial of her WIGI. On March 2, 2007, defendant filed a Motion For Abeyance with the EEOC to hold the EEOC proceedings in abeyance until the MSPB ruled on the mixed case appeal of the denial of the WIGI. On

March 15, 2007, the EEOC issued an Order granting the agency's motion to hold the EEOC case in abeyance pending the outcome of the MSPB mixed case appeal. After Plaintiff conducted discovery,[2] the MSPB held a hearing on June 11 and 12, 2007. On August 16, 2007, the MSPB issued an Initial Decision (ID) that defendant had proven by substantial evidence that Plaintiff had failed to perform at an acceptable level of competence (based on the "minimally successful" rating in Critical Element II "Management and Leadership") and, thus, properly denied Plaintiff a WIGI. The MSPB also held that Plaintiff had failed to prove by preponderant evidence her affirmative defenses of discrimination, retaliation and harmful procedural error or errors of law. The MSPB's ID became final on September 20, 2007. This complaint is timely filed in U.S. District Court within thirty (30) calendar days of the date the ID became final. 5 U.S.C. § 7703(b)(2); 42 U.S.C. § 2000e-16(c). Accordingly, Plaintiff has exhausted her administrative remedies, and these claims that the MSPB's decision affirming defendant's denial of Plaintiff's WIGI is not supported by substantial evidence and that defendant discriminated and

---

[2] Defendant did not conduct discovery at the MSPB as defendant failed to file timely discovery requests.

13

retaliated against Plaintiff may be raised in this civil action.

VI. **STATEMENT OF CLAIM**

**COUNT 1   (The MSPB's Decision Is Not Supported By Substantial Evidence)**

21. Plaintiff repeats and realleges the statements contained in paragraphs 9 through 19 as though fully set forth herein.

22. The MSPB's decision affirming defendant's denial of Plaintiff's WIGI is not supported by substantial evidence.

**COUNT II   (Race Discrimination)**

23. Plaintiff repeats and realleges the statements contained in paragraphs 9 through 19 as though fully set forth herein.

24. Defendant has discriminated against Plaintiff because of her race (African American) in violation of Title VII of the Civil Rights Act, as amended.

**COUNT III (Retaliation)**

25. Plaintiff repeats and realleges the statements contained in paragraphs 9 through 19 as though fully set forth herein.

26. Defendant has retaliated against Plaintiff for exercising her right to oppose discrimination in violation of Title VII of the Civil Rights Act, as amended.

## VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this honorable Court grant her the following relief:

a. Declare that the MSPB's decision affirming defendant's denial of Plaintiff's WIGI is not supported by substantial evidence;

b. Declare that defendant discriminated and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act, as amended;

c. Enjoin defendant from further acts of discrimination and retaliation;

d. Order defendant to grant Plaintiff' WIGI retroactive to June 27, 2006; with appropriate back pay plus interest and other benefits to make her whole;

e. Award Plaintiff compensatory damages in the amount of $300,000, in compensation for the damages she has suffered to make her whole;

f. Award Plaintiff reasonable attorneys' fees and costs;

g. Award Plaintiff all other legal and equitable relief to which she may be entitled to make her whole.

### JURY DEMAND

Plaintiff demands a jury trial on all issues triable to a jury.

**VERIFICATION**

Under penalty of perjury, I swear that the foregoing factual statements are true and correct to the best of my knowledge and belief.

_Robin E. Robinson_ (signature)
Robin E. Robinson

_September 26, 2007_
DATE

Respectfully submitted,

_June Q_ (signature)
June D.W. Kalijarvi, Esq.
D.C. Bar Number 183863
Kalijarvi, Chuzi, & Newman, P.C.
1901 L Street, N.W.
Suite 610
Washington, DC 20036
(202) 331-9260
FAX: 202/331-9261
Attorneys for Plaintiff

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Robin Robinson
14608 Debenham Way
Bowie, MD 20721

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  PG County
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

June D.W. Kalijarvi, Esq.
Kalijarvi, Chuzi & Newman
1901 L Street, NW, Suite 610
Washington, DC 20036
202/331-9260

## DEFENDANTS

Margaret Spellings
in her official capacity as
Secretary of Education, US Department of Education

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01731
Assigned To : Roberts, Richard W.
Assign. Date : 9/27/2007
Description: Employ. Discrim.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
⊙ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ○ G. *Habeas Corpus/ 2255* | ⊙ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
relief from a mixed case pursuant to 5 U.S.C. section 7703(b)(2)

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 300,000.00   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 9/27/07   SIGNATURE OF ATTORNEY OF RECORD *June Q*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.