UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN E. ROBINSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ARNE DUNCAN,<br>Secretary of Education,<br><br>　　　　Defendant. | Civil Action No. 07-1731 (RWR/JMF) |

**MEMORANDUM OPINION**

　　This case is before me for resolution of discovery motions. Currently pending and ready for resolution is <u>Defendant's Motion to Compel Discovery</u> [#21]. For the reasons stated herein, defendant's motion will be denied.

**INTRODUCTION**

　　Plaintiff, Robin Robinson, seeks review of a decision by the Merit Systems Protection Board ("MSPB") regarding her claim that she was discriminated against on the basis of her race (African-American) and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2002[1] et seq. <u>Second Amended Complaint for Review of a Decision by the Merit Systems Protection Board in a Mixed Case and for Relief from Discrimination in Federal Employment</u> ("Am. Compl.") ¶1. Plaintiff has been working as Program Operations Group Leader in the Impact Aid Office at the Department of Education

---

[1] All references to the United States Code are to the electronic versions in Westlaw or Lexis.

since June of 2005. Am. Compl. ¶14.  Specifically, she claims the following:  1) that the MSPB's initial determination regarding her claim that she was constructively denied a within grade increase ("WIGI") was not supported by substantial evidence, 2) that because of her race and in retaliation for her claims of discrimination, she was denied two WIGIs and suffered additional adverse actions, and 3) that her performance evaluations and other assessments of her work were conducted in a manner different from those used to evaluate the work of her white colleagues. Am. Compl. ¶¶2-6.  Plaintiff seeks, *inter alia*, two retroactive WIGIs along with the corresponding back pay, compensatory damages, and attorney's fees and costs. Am. Compl. at pages 18-19.

## DISCUSSION

I.      Plaintiff's Tax Records

First, defendant argues that plaintiff's federal and state income tax returns from 2005 to the present are relevant because plaintiff seeks compensatory damages for that same period. Memorandum in Support of Defendant's Motion to Compel Discovery ("Defs. Mem.") at 3. Defendant also argues that he is entitled to determine whether there are other potential causes of that stress, namely, financial problems, because plaintiff claims that she has suffered a great deal of stress as a result of defendant's actions. Id.  Finally, defendant notes that it would be willing to enter into a protective order to ensure that the information remains protected from public disclosure and other inappropriate use. Id.

Plaintiff counters that "income is simply not relevant to compensatory damages, which are designed to compensate a plaintiff for pain and suffering." Opposition to Defendant's Motion to Compel Discovery ("Plains. Opp.") at 2.  Plaintiff also states that she would be willing to provide defendant with an affidavit attesting to her financial security. Id. at 3.  Finally, plaintiff

2

argues that, even if she were to provide defendant with her tax returns, they wouldn't necessarily reveal any financial problems. Id.

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense." Fed. R. Civ. P. 26(b)(1). With respect to income tax returns, courts, including this Court, acknowledge that they are "confidential communications between a taxpayer and the government.'" Am. Air Filter Co., Inc., v. Kannapell, No. 85-CV-3566, 1990 WL 137385, at *3 (D.D.C. Sept. 10, 1990) (quoting Fed. Sav. & Loan Ins. Co. v. Krueger, 55 F.R.D. 512, 514 (N.D. Ill. 1972)). Accord Nat'l Gas Pipeline Co. of Am v. Energy Gathering, Inc., 2 F.3d 1397, 1411 (5th Cir. 1993), cert denied, 510 U.S. 1073 (1994). In the context of a discovery dispute, however, the key issue remains one of relevance. In other words, "[w]hile the courts vary in their interpretations of the breadth of the statutory protection [afforded by the tax laws] . . . most courts do not recognize the existence of a 'privilege' against disclosure . . . rather [the courts] recognize a general federal policy limiting disclosure to appropriate circumstances." Eglin Fed. Credit Union v. Cantor, 91 F.R.D. 414, 416 (N.D. Ga. 1981). In order to determine whether disclosure is appropriate, the court must conclude "(1) that the returns are relevant to the subject matter of the action; and (2) that there is a compelling need for the returns because the information contained therein is not readily otherwise obtainable." S.E.C. v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985).

The first issue, therefore, is whether plaintiff has placed her income at issue. In American Air Filter, plaintiffs, two corporations, sued former employees for intentional inducement to breach a contract, breach of fiduciary duties, and for an accounting. Am. Air Filter, 1990 WL 137385, at *1. Specifically, plaintiffs claimed that defendants diverted business

3

away from plaintiffs and to themselves. Id. at *3.  Plaintiffs therefore sought defendants' tax returns as a means of verifying the extent of defendants' profits. Id. at *4.  In that case, this Court had no trouble concluding that defendants' tax returns were relevant and that plaintiffs had satisfied the first prong of the test. Id.  The Court went on to note that, whether or not the party opposing production has the burden to prove that there are other sources from which the same information may be obtained, the alternative sources suggested by defendants could not provide the information plaintiffs sought. Id.  The Court also noted that traditional privacy concerns were minimized since plaintiffs offered to sign a confidentiality agreement. Id.

A contrary result was reached in Payne v. Howard, 75 F.R.D. 465 (D.D.C. 1977).  In that case, a patient suing her doctor for malpractice sought the doctor's income tax returns. Id. at 469.  According to plaintiff, the returns were discoverable because they would illustrate whether or not the doctor was under any type of financial pressure to increase his workload to the point where his treatment of his patients suffered. Id.  Emphasizing the confidential nature of these documents, the Court denied plaintiff's request.  The Court also noted, however, that plaintiff could easily have learned about the doctor's workload by simply examining his appointment book. Id. at 470.

In the case at bar, while plaintiff does seek back pay, as she notes in her opposition, what she really seeks is the reinstatement of two WIGIs that she contends were unfairly denied her. Plains. Opp. at 2.  In other words, her earnings for the period from 2005 to the present are irrelevant to the amount she would have earned had she received the WIGIs to which she claims she was entitled. Cf. Butler v. Exxon Mobil Refining and Supply Co., No. 07-CV-386, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) (holding that plaintiff placed his income and earning capacity at issue by seeking *inter alia* past and future lost wages and benefits).

While the cost to plaintiff of producing the returns is minuscule, its societal costs are great. First, as the courts have explained in the cases cited herein, the American tax system is one of voluntary self-exaction and taxpayers might be less than candid on their returns if those returns were available to opposing parties in litigation in the ordinary course. See Nat'l Gas Pipeline, 2 F.3d at 1411 ("Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system.").

Second, the provisions of Title VII and other civil rights statutes that permit the award of damages to those who are victimized by illegal discrimination are designed to eradicate that discrimination by encouraging victims to come forward and complain about it. There would, however, be a significant deterrent to the effectuation of that policy if every civil rights plaintiff had to produce her tax returns as a precondition of seeking damages.

While both of these social policies might have to yield to the production of tax returns in a compelling case, this is not that case. The defendant seeks the returns only because of a theoretical possibility that there was another cause for the stress about which plaintiff complains. Since that could be said of every plaintiff who claims stress in a civil rights case, the protection of tax returns from production unless essential to the resolution of the issues before the Court would quickly be rendered nugatory.

II. Plaintiff's Retainer Agreement

Second, defendant seeks to compel the production of plaintiff's retainer agreement with her attorney, arguing that it is relevant to plaintiff's claim for attorney's fees. Defs. Mem. at 4. Plaintiff, citing this Court's decision in Banks v. Office of the Senate Sergeant-at-Arms and Doorkeeper, 222 F.R.D. 7 (D.D.C. 2004), argues that fee arrangements are only relevant if

plaintiff prevails. Plains. Opp. at 4.  Defendant counters that, although attorney's fees only become relevant to the case if plaintiff prevails, plaintiff could have sought to have the case bifurcated into a merits phase and a relief phase. Reply in Support of Defendant's Motion to Compel Discovery at 4.  In keeping with its earlier decision in Banks, the Court concludes that, while not privileged and potentially relevant at a later point in the proceedings, plaintiff's fee arrangement with her attorney is not currently relevant.  See Banks, 222 F.R.D. at 13.  As to this document, therefore, defendant's request will be denied without prejudice.

      An Order accompanies this Memorandum Opinion.

                                                    /S/  
                                      JOHN M. FACCIOLA  
                                      UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2009