IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

ROBIN E. ROBINSON    )
         )
  *Plaintiff*,    )  CASE NO.  1:07-cv-01731-BJR-JMF
         )
  v.      )
         )  OPINION AND ORDER GRANTING
ARNE DUNCAN,    )  DEFENDANT'S MOTION FOR
Secretary of Education   )  SUMMARY JUDGMENT
         )
  *Defendant*.   )
_____

OPINION

   Plaintiff Robin E. Robinson, an African-American woman, brings this Title VII action

alleging that the defendant Secretary of Education ("Agency") discriminated and retaliated

against her by rating her as minimally successful three times, thereby leading to the denial of a

within-grade increase ("WIGI") of pay for two years. She also alleges that the Merit Systems

Protection Board ("MSPB") erred by upholding an unsubstantiated and procedurally flawed

Agency decision to deny her a WIGI. The Agency moves for summary judgment. Having

considered the papers filed in support of and in opposition to this motion, as well as the parties'

statements of undisputed facts, exhibits, a notice of supplemental authority, a joint status report,

and the balance of the record, the Court GRANTS the Agency's motion for summary judgment.

# I. BACKGROUND

The following facts are undisputed.  Plaintiff is a GS-15 Group Leader for the Program Operations Group ("POG"), within the Department of Education's Impact Aid Program ("IAP").  Def. Stmnt. Facts ¶¶ 6–7.  The person within the Agency accused of having engaged in racially discriminatory and retaliatory conduct is plaintiff's direct supervisor, the Director of IAP Cathy Schagh, a white woman.   Id. ¶ 4; Pl. Stmnt. Facts ¶ 34.  Ms. Schagh hired plaintiff as the POG group leader in 2005, Def. Stmnt. Facts ¶¶ 6–7; rated plaintiff as "Minimally Successful" with respect to "Management and Leadership" three times, id. ¶¶ 47, 66, 84; withheld plaintiff's WIGI twice, in 2006 and 2007, based on the minimally successful ratings, id. ¶¶ 45–46, 75–76; and finally approved plaintiff's WIGI in 2008 after finding that plaintiff's performance had improved, id. ¶¶ 92–93.  In 2007, plaintiff filed an administrative appeal with the MSPB regarding the denial of her WIGI in 2006.  MSPB Record ("MSPB R."), Vol. V at 4.[1]  After holding an administrative hearing on plaintiff's appeal at which witnesses testified to conflicting versions of plaintiff's conduct and management style, the MSPB held that the Agency had supported the decision to deny plaintiff's WIGI with substantial evidence, that plaintiff had failed to establish affirmative defenses of discrimination and retaliation, and that plaintiff had failed to show harmful procedural errors that would have altered the outcome.  MSPB R., Vol. V.

A.     Hiring of Plaintiff, First Performance Review, and 2006 Denial of WIGI

In April 2005, Ms. Schagh, the Director of IAP, interviewed plaintiff and other applicants for two GS-15 group leader positions within IAP.  Def. Stmnt. Facts ¶¶ 1–3.  Ms. Schagh

---

[1] The Court refers to the MSPB decision's Bates numbering rather than to the decision's internal pagination.

selected plaintiff for POG Group Leader.[2]  Def. Stmnt. Facts ¶ 6.  Plaintiff assumed her position as POG Group Leader on June 27, 2005.  Id. ¶ 7.

Ms. Schagh states that she began to have reservations about plaintiff's performance during the late summer and early fall of 2005, because plaintiff's staff came to Ms. Schagh directly about their work instead of consulting plaintiff.  Id. ¶ 11; Schagh MSPB Tr. at 175.  Ms. Schagh initially attributed  this to plaintiff being new to her position.  Def. Stmnt. Facts ¶ 11; Schagh MSPB Tr. at 175.  Beginning in the fall of 2005, however, at least five IAP staff members, two of them directly supervised by plaintiff, approached Ms. Schagh with complaints about witnessing or being subject to incidents involving plaintiff's rudeness, lack of professionalism, condescension, and personal attacks: (1) plaintiff's co-worker Veronica Edwards, an African-American Program Analyst with over thirty years of experience at the Agency, MSPB R., Vol. I at 190–205; (2) plaintiff's co-worker Jacqueline Edwards, an African-American Program Management Specialist with over ten years of experience in IAP, id. at 72–77; (3) plaintiff's subordinate Nanette Dunham, an African-American woman with approximately twenty years of experience at the Agency, id. at 63–65; (4) plaintiff's subordinate Robert Joyce, a white man serving as the POG assistant group leader, id. at 101–02, 108–20; and (5) co-worker Kristen Walls-Rivas, a white Management and Program Analyst in PSG, id. at 86.

Ms. Schagh reports having alerted plaintiff to these complaints in October 2005.  Def. Stmnt. Facts ¶ 31; Robinson Dep. 56–58; Schagh MSPB Tr. at 197.  Plaintiff acknowledges that Ms. Schagh had mentioned "some problems with Veronica and some other staff had mentioned some problems with my communications."  Robinson MSPB Tr. 410.  According to plaintiff, "I think she wanted me to be aware of what other people were saying about me and what they felt,

---

[2] POG reviews applications from public schools, which involves interacting with public schools and monitoring them.  Def. Stmnt. Facts ¶ 3; Robinson Dep. at 33–34.

because I did not agree." Robinson Dep. at 57. Ms. Schagh reports having not heard much further about plaintiff until March 3, 2006, when Mr. Joyce, the POG assistant group leader, requested to meet with Ms. Schagh on his last day of work before assuming a new position elsewhere. Schagh MSPB Tr. at 197–98; Def. Stmnt. Facts ¶¶ 33, 39. According to Mr. Joyce, plaintiff threatened those she supervised with poor performance reviews and told them not to complain to Ms. Schagh. Id. ¶ 40; Joyce MSPB Tr. at 85. In summation, Mr. Joyce stated, "I have been a Federal Employee for approximately twenty six years and have never felt as threatened, insulted, or demeaned as I was during the period that I worked with Ms. Robinson." MSPB R., Vol. I at 120.

The same evening, on March 3, 2006, Ms. Schagh sought the advice of Office of Elementary and Secondary Education ("OESE") Executive Officer Ruth Hall about Mr. Joyce's allegations. Schagh MSPB Tr. 198–99. Over the following weeks, Ms. Schagh consulted Michael West of the Agency's Informal Dispute Resolution Center ("IDRC") and Jeanette Lim, then the Deputy Assistant Secretary for Management in OESE. Id. at 199, 201. She also met with other people on the IAP staff, including members of plaintiff's POG staff. Id. at 199. Although a number of plaintiff's staff members reported positively about plaintiff's professional demeanor, Ms. Schagh found the complaints to be credible and troubling based on her long acquaintance with the complainants. Id. at 200–01. On March 13, 2006, plaintiff began pre-complaint counseling with the Equal Employment Opportunity ("EEO") office, i.e., after she was aware that Ms. Schagh was investigating the allegations about plaintiff's unprofessional conduct. Robinson MSPB Tr. at 495–96; MSPB R., Vol. V at 31. Moreover, plaintiff did not inform the Agency via e-mail about her EEO action until March 24, 2011, after an appointment with Ms.

Schagh to discuss performance issues and a sixty-day improvement plan had already been scheduled for that very afternoon.[3]   Pl. Opp., Exs. 17, 20–21.

On July 6, 2006, plaintiff received her performance appraisal, which reflected an overall rating of Minimally Successful.  Def. Stmnt. Facts ¶¶ 47, 51.  Plaintiff's performance standards were grouped among three critical elements: (1) Organizational Priorities; (2) Customer Service; and (3) Management and Leadership.  Id. ¶ 48.  Ms. Schagh rated plaintiff as Successful on the first two elements, and rated her as Minimally Successful on the third element, Management and Leadership, thus resulting in the overall rating of Minimally Successful.  Id. ¶¶ 49–50.  Plaintiff was denied a WIGI in 2006 based on the Minimally Successful rating.  Id. ¶ 45.

B.    Second Performance Review and 2007 Denial of WIGI

On January 16, 2007, plaintiff received a performance rating for the period of July 7, 2006 to November 7, 2006.  Def. Stmnt. Facts ¶ 65.  As with her prior performance appraisal, plaintiff received an overall rating of Minimally Successful.  Id. at 66.  Once again, plaintiff received Successful ratings for the first two critical elements and a Minimally Successful rating for the Management and Leadership element, thus resulting in the overall rating of Minimally Successful.  Id. at 67.[4]  Ms. Schagh justified her rating of plaintiff in detail:

> Robin still experiences difficulties in interpersonal relationships with her supervisor, some of her staff, and other colleagues that she interacts with.  A staff meeting that she conducted during this rating period was disorganized and chaotic.  For much of the meeting time, the staff were out of control, talking at the

---

[3] It is notable that although plaintiff sent an e-mail message to her third-level supervisor  on March 17, 2006, about Ms. Schagh's treatment of her, she made no mention of EEO counseling or of discrimination.  Pl. Opp., Ex. 18 (e-mail message from Robinson to Johnson, dated Mar. 17, 2006).  She did, however, state that she was aware of the March 3 complaints made by Mr. Joyce, that another person in IAP who had wanted plaintiff's position was conspiring against her, and that it was common knowledge that there was an open investigation about plaintiff's performance.  Id.

[4] Plaintiff had, however, improved on one of the five standards used to evaluate the Management and Leadership element: whereas previously she'd received a 2 (Minimally Successful) on all five standards, this time she received a 3 (Successful) for the third element, which involved communication with employees.  Id. at 70.

5

same time, and even shouting at each other. Very little was accomplished during the meeting, and I was informed by several individuals afterwards that this is typical of staff meetings that Robin conducts, which I have not attended. I am also concerned about her judgment in sharing confidential personnel related documents and information with members of her staff when it does not involve them. As a manager, Robin must realize that it is not appropriate to discuss certain matters with staff. Rather than focusing on encouraging and supporting her staff, Robin tends to react in a negative way. During this time period, while most of her staff were working hard to meet deadlines in their EDPAS standards, Robin stated to them during their midyear reviews that she did not think any of them were going to achieve the successful level on one of their performance standards. In fact, most of the staff exceeded the successful level.

Robinson Dep., Ex. 11 at 234–35.

Plaintiff became eligible for a WIGI again on June 24, 2007. Def. Stmnt. Facts ¶ 74. Ms. Schagh again withheld plaintiff's WIGI based on the minimally successful performance rating and her conduct. Id. On September 27, 2007, Ms. Schagh provided plaintiff with official notice that her 2007 WIGI would be withheld based on the overall Minimally Successful rating. Id. ¶ 75. Throughout, plaintiff told Ms. Schagh that she believed her performance rating and the denial of her WIGI to be race-based discrimination and retaliation for her EEO complaint. Id. ¶¶ 72, 78.

C.    Third and Fourth Performance Reviews and 2008 Grant of WIGI

Although plaintiff was not on an official performance appraisal between November 8, 2006, and March 21, 2007, Ms. Schagh and plaintiff continued to discuss plaintiff's performance. Id. ¶ 79. On March 2, 2007, Ms. Schagh provided plaintiff with a document setting forth the performance expectations for plaintiff and how plaintiff could meet them. Id. ¶ 80; Def. Ex. 10 at 227–32. Plaintiff's next performance period spanned March 22, 2007, to September 30, 2007. Def. Stmnt. Facts ¶ 81. On October 26, 2007, plaintiff received her third performance appraisal as POG Group Leader and again received an overall rating of Minimally Successful. Id. ¶ 83. Once again, plaintiff attained a Successful rating on the first two elements

6

and a Minimally Successful rating on the Management and Leadership element. <u>Id.</u> ¶ 85.[5]  Ms. Schagh noted a marked improvement in plaintiff's "attitude and manner toward her supervisor," but noted that plaintiff was a "disruptive influence in the office and did not reflect my leadership direction.  She did not exhibit good judgment in recommending candidates for staff positions and contributed to an additional two members of her staff leaving the office."  Robinson Dep., Ex. 12 at 237–38.

In April 2008, Ms. Schagh issued a memorandum to plaintiff in which she offered to implement a Performance Assistance Plan for Critical Element Management and Leadership ("PAP") that set forth targeted expectations, how plaintiff could meet those expectations, and the assistance that Ms. Schagh and others were willing to provide.   Robinson Dep., Ex. 8 at 110–15; Def. Stmt. 89–90.  Although plaintiff stated that the concerns expressed in the PAP were unfounded, she nonetheless followed the PAP's guidance and instructions.   Robinson Dep. at 113, 117.  When plaintiff's fourth rating cycle ended in September 2008, plaintiff received a Successful rating.  Def. Stmt. Facts ¶ 92.  As a result, she received her WIGI in October 2008. <u>Id.</u> ¶ 93.

D.    <u>MSPB Proceedings and MSPB Affirmance of 2006 WIGI Denial</u>

On January 22, 2007, plaintiff filed an administrative appeal with the MSPB regarding the denial of her WIGI in 2006.  MSPB R., Vol. V at 4.  As part of the appeal, Plaintiff asserted affirmative defenses of discrimination based on race, retaliation, and harmful procedural and legal errors. An administrative judge conducted a hearing at which plaintiff, Ms. Schagh, and numerous IAP employees testified consistently with their previous statements, i.e. the Agency's

---

[5] Of the five evaluative standards for Management and Leadership, plaintiff had earned a 3 (Successful) on standards two and three; had remained at 2 (Minimally Successful) on standard one and four; and had slipped to a 1 (Unacceptable) on standard five, which was related to recruitment and development.  <u>Id.</u> at 86.

witnesses testified to plaintiff's lack of professionalism, several of plaintiff's staff members testified to their admiration for plaintiff's leadership and management, and plaintiff stated her belief that she had faced discriminatory and retaliatory action.  Id. at 4–26.

On August 16, 2007, the AJ issued an Initial Decision affirming the Agency's denial of Robinson's WIGI.  Id. at 4.  The AJ found that although there were conflicting reports about plaintiff's performance, the Agency had supported the minimally successful ratings by substantial evidence and therefore had adequately justified the denial of plaintiff's WIGI.  Id. at 5–26.  The AJ found that plaintiff had failed to establish by preponderant evidence her affirmative defenses of discrimination, retaliation, and harmful procedural and legal errors.  Id. at 26–39.  The AJ further noted that even if harmful procedural error were presumed, the WIGI denial could not be reversed absent a showing that plaintiff's performance reflected an acceptable level of competence as required by statute, and that had not been shown.  Id. at 38.  Because plaintiff did not seek MSPB review of the Initial Decision it became a final decision on September 20, 2007.  Id. at 39.

Plaintiff timely filed the present lawsuit seeking review of the MSPB's decision and alleging discrimination and retaliation in violation of Title VII.  Dkt. 1.  She amended her complaint twice to include all three minimally successful ratings she received.  Dkts. 6, 16.

## II. STANDARD OF REVIEW

Summary judgment should be granted if the "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c) (2007)[6]; see also <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986); <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." <u>Holcomb</u>, 433 F.3d at 895 (quoting <u>Anderson</u>, 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>See</u> <u>Anderson</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." <u>Anderson</u>, 477 U.S. at 255; <u>see also</u> <u>Mastro v. Potomac Elec. Power Co.</u>, 447 F.3d 843, 849–50 (D.C. Cir. 2006); <u>Aka v. Washington Hosp. Center</u>, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); <u>Washington Post Co. v. Dep't of Health and Human Servs.</u>, 865 F.2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e) (2007); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). She is required to provide evidence that would permit a reasonable jury to find in her favor. <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. <u>Anderson.</u>, 477 U.S. at 249–50. To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims." <u>Freedman v. MCI Telecomm. Corp.</u>, 255 F.3d 840, 845 (D.C. Cir. 2001). In an employment discrimination case, "[u]sually, proffering

[6] The current Rule 56 became effective after the Agency's motion for summary judgment was filed and was ripe for consideration. The amendments to Rule 56 do not alter or affect the outcome of this matter.

evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury." George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005) (citing Carpenter v. Fed. Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999)) (internal quotations omitted).

## III.    DISCUSSION

Plaintiff does not dispute that Ms. Schagh selected her for the POG Group Leader position.  Plaintiff also does not dispute that at least five IAP staff members complained to Ms. Schagh about mistreatment by plaintiff.  These circumstances, as well as Ms. Schagh's own observations of plaintiff's performance, provided the Agency with legitimate, non-discriminatory reasons for rating plaintiff minimally successful in the area of management and leadership.  In response, plaintiff has presented no evidence of racial discrimination or retaliation beyond conclusory allegations.  No reasonable jury could find for plaintiff when the record shows conflicting accounts of plaintiff's effectiveness and the absence of evidence of racial discrimination or retaliation.  Furthermore, the MSPB decision was supported by substantial evidence.

A.    Plaintiff's Claims of Discrimination and Retaliation

Title VII prohibits the federal government from discriminating against an employee based on her race as well as from retaliating against an employee for filing a discrimination complaint.  See Montgomery v. Chao, 546 F.3d 703, 706 (D.C. Cir. 2008); 42 U.S.C. §§ 2000e-2(a)–2002e-3(a).  To prevail on her race-discrimination claim, plaintiff must show that "(i) [she] suffered an adverse employment action (ii) because of [her] race[.]"  Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  To prevail on a retaliation claim, plaintiff "must establish that

[she] suffered (i) materially adverse action (ii) because . . . she had brought or threatened to bring a discrimination claim." Id. at 1198.

Where, as here, an employer articulates legitimate, non-discriminatory reasons for its actions, the familiar McDonnell Douglas burden-shifting framework "disappear[s] and the sole remaining issue [is] discrimination [or retaliation] vel non." Montgomery, 546 F.3d at 706 (citation and internal quotation marks omitted). Under such circumstances, "the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Thus, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all the evidence that the adverse employment decision was made for a discriminatory [or retaliatory] reason." Montgomery, 546 F.3d at 706 (citation and internal quotation marks omitted).

1.    Probative Evidence of Non-Discrimination by Ms. Schagh

Plaintiff's claim of discrimination faces a significant initial hurdle in that Ms. Schagh herself selected plaintiff to be POG Group Leader less than a year before beginning an investigation into complaints of plaintiff's conduct that led to the first minimally successful performance evaluation. The D.C. Circuit noted that "'when the person who made the decision to [take an adverse action] was the same person who made the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire,' especially 'when the [adverse action] has occurred only a short time after the hiring.'" Waterhouse v. District of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002) (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)). The D.C. Circuit recently reiterated this principle, holding that "[a]lthough the fact that [the supervisor] initially selected [plaintiff]

11

does not <u>alone</u> suffice for summary judgment, it is probative evidence that [the supervisor] did not discriminate against [plaintiff] on account of her race or gender when he dismissed her later that year." <u>Vatel v. Alliance of Automobile Manuf.</u>, 627 F.3d 1245, 1247 (D.C. Cir. 2011).

As in <u>Vatel</u>, although the fact that Ms. Schagh selected plaintiff as POG Group Leader <u>alone</u> would not suffice for summary judgment, it constitutes probative evidence that Ms. Schagh did not discriminate against plaintiff on account of her race when she rated her as minimally successful during evaluations of her performance.

    2.    <u>Legitimate, Non-Discriminatory Reasons for Minimally Successful Ratings</u>

Plaintiff alleges that the Agency discriminated and/or retaliated against her by giving her three performance appraisals in which she was rated minimally successful, resulting in the denial of two WIGIs. The Agency has, however, stated legitimate, non-discriminatory reasons for these performance evaluations.

During the first rating period of May 1, 2005, through April 30, 2006, the undisputed evidence shows that five longtime IAP staff members went to Ms. Schagh with complaints about plaintiff's unprofessional, even hostile, conduct. Ms. Schagh based plaintiff's first minimally successful rating on the reports from these employees as well as her own personal observations. Def. Stmnt. Facts ¶¶ 45–59. During the second rating period of July 7, 2006 to November 7, 2006, Ms. Schagh based plaintiff's second minimally successful rating on personal observations and perceptions of plaintiff's conduct: a meeting conducted by plaintiff that appeared to be out of control; the manner in which plaintiff handled confidential personnel matters; plaintiff's overly critical and negative interactions with staff; and instances of discourtesy and disrespect that plaintiff directed toward Ms. Schagh. Def. Stmnt. Facts ¶¶ 61–78. During the third rating period of March 22, 2007, to September 30, 2007, Ms. Schagh based plaintiff's minimally successful

rating on her perception that plaintiff was a disruptive influence and appeared to be undermining Ms. Schagh's leadership. Id. ¶¶ 87–88. As support, Ms. Schagh referred to the departure of one staff member, Ebony Mack; that another staff member, Nanette Dunham, approached Ms. Schagh in tears seeking to be detailed to another office; and that when Ms. Schagh selected someone other than plaintiff's choice to serve as plaintiff's special assistant, plaintiff yelled at Ms. Schagh and stated "that she would not work with this individual and that [Ms. Schagh] was selecting this person to spy on her." Schagh Decl. ¶¶ 25–26.

With respect to denying plaintiff's WIGI twice, under federal personnel law an employee cannot be given a WIGI unless the employee's performance is at an acceptable level of competence. See 5 U.S.C. § 5335(a); 5 C.F.R. § 531.404(a). This is determined by reference to an employee's most recent rating of record. See 5 C.F.R. §§ 531.404(a), 531.409(b). Ms. Schagh was compelled to deny plaintiff's WIGI in 2006 and 2007 because plaintiff had been rated as minimally successful during the relevant review periods.

3.  No Plausible Inference of Discriminatory or Retaliatory Animus

The D.C. Circuit has observed that "Title VII . . . does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). Accordingly, a court may not "second guess an employer's personnel decision absent [a] demonstrably discriminatory motive." Fischbach v. D.C. Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation and internal quotation marks omitted). Similarly, to survive summary judgment, a reasonable jury must be able to draw an inference of a retaliatory motive from the evidence. Jones v. Bernanke, 557 F.3d 670, 679–80 (D.C. Cir. 2009).

13

Plaintiff has presented nothing aside from conclusory allegations from which a reasonable jury could infer that Ms. Schagh acted with discriminatory or retaliatory animus. Plaintiff's subjective assessment that she performed at a high level since the beginning of her employment with the Agency cannot prove that Ms. Schagh acted in a discriminatory manner by rating her otherwise. "It is settled that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Vatel, 627 F.3d at 1247 (citation and quotation marks omitted). Similarly, repeated citation to others who opine that Ms. Schagh is a racist constitutes conclusory speculation devoid of any factual foundation or connection to the performance review of plaintiff, and such statements would be inadmissible as evidence. See Greer v. Paulson, 505 F.3d 1306, 1315–16 (D.C. Cir. 2007) ("To survive summary judgment the non-moving party must 'produce evidence . . . capable of being converted into admissible evidence.'") (quoting Gleklen v. Democratic Cong. Campaign Committee, 199 F.3d 1365, 1369 (D.C. Cir. 2000)); Fed R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Fed R. Evid. 701.

Plaintiff alleges that statements made by Ms. Schagh in a November 2007 e-mail message—that, after plaintiff stated that she was a victim of discrimination, Ms. Schagh stated, "I WANT HER OUT OF HERE NOW"—constitute direct or indirect evidence of a retaliatory animus. Read in its proper context, the e-mail message suggests nothing of the kind. Ms. Schagh was holding a meeting with plaintiff and PSG Group Leader Marilyn Hall to discuss a human capital survey, and plaintiff opined that performance ratings would go up if Ms. Schagh would "stop discriminating against everyone." Pl. Opp., Ex. 50. Ms. Schagh described her

14

exasperation at plaintiff's repeated accusations of racial discrimination at inappropriate times and places:

> In this meeting, Robin brought up her performance rating as an example of my discrimination in the office and tried to get Marilyn involved in a discussion of whether she thought it was appropriate. Marilyn refused to do this. I told Robin several times that this was not an appropriate forum for such a discussion but she kept bringing it up. When she informed me that everyone in the office knows what is going on, I replied that that is because she is talking about it to everyone. When she asked why she shouldn't, I said that it is her personal business and that it is between her and me, not the whole staff. Then she responded that it is not just her situation.
>
> Her behavior toward me and Marilyn was rude, disrespectful, and inappropriate. I WANT HER OUT OF HERE NOW. I would even request that she be put on administrative leave until a place can be found for her.

Id.; see, e.g., Robinson Dep. at 124–26. Although Ms. Schagh expressed a desire to have plaintiff transferred to another office—a desire that was never realized—there is no suggestion that the source of her frustration was plaintiff's protected EEO activity. Rather, she stated a sentiment that she repeated in her performance reviews of plaintiff and is reflected in complaints by other employees, that plaintiff was frequently "rude, disrespectful, and inappropriate." Pl. Opp., Ex. 50. Ms. Schagh's statements in the November 2007 e-mail message do not plausibly suggest a retaliatory animus directly or indirectly. Cf. Woodruff v. Peters, 482 F.3d 521, 530 (D.C. Cir. 2007) (noting that employees who have filed EEO complaints are not placed in a "discipline-free zone").

One way to discredit an employer's justification is to show that similarly situated employees of a different race received more favorable treatment. Here plaintiff alleges that Ms. Schagh's reasons for rating her minimally successful are pretextual because Marilyn Hall, the white PSG Group Leader, was rated successful in the area of leadership and management even though she was absent on medical leave for part of the review period to undergo surgery and

15

chemotherapy for cancer. Pl. Opp. at 9–10; Hall MSPB Tr. at 24–27. Plaintiff's argument fails because it is demonstrably false that "all of the relevant aspects of [her] employment were 'nearly identical'" to those of Ms. Hall. Royall v. National Ass'n of Letter Carriers, 548 F.3d 137, 145 (D.C. Cir. 2008) (citation and internal quotation marks omitted). Plaintiff was rated poorly primarily due to serious complaints about her professional conduct made by other IAP employees and for poor decision-making personally observed by Ms. Schagh. Such numerous and serious complaints about Ms. Hall's professional conduct were not received by Ms. Schagh. Ms. Hall was simply gone on medical leave. Plaintiff and Ms. Hall were not similarly situated and comparing the two does not lead to an inference that Ms. Schagh's reasons for rating plaintiff as minimally successful constituted a pretext for discrimination. See, e.g., Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (concluding that a female associate at a law firm who was terminated because of her failure to get along with others was not similarly situated to a less senior male associate who had trouble with legal writing).

4. No Causal Connection Between Performance Ratings and Protected Activity

Plaintiff contends that a causal connection exists between her performance rating and having complained about discrimination because Ms. Schagh did not meet with her to discuss performance concerns until after plaintiff notified Ms. Schagh that she had contacted the Agency's Informal Dispute Resolution Center and EEO office. Pl. Opp. at 35–36; Pl. Stmnt. Facts ¶ 35. This contention does not account for the undisputed fact that Ms. Schagh began investigating plaintiff's performance, and plaintiff was aware that this investigation had commenced, prior to plaintiff engaging in any protected EEO activity. Schagh MSPB Tr. at 199; Robinson MSPB Tr. at 495–96.

16

Although temporal proximity between the protected activity and an adverse employment action can support an inference of retaliation where the two elements are very close in time, temporal proximity alone does not rebut an employer's proffer of legitimate and non-discriminatory reasons. Woodruff, 482 F.3d at 530. "If temporal proximity sufficed to rebut a legitimate proffer, protected activities would effectively grant employees a period of immunity, during which no act, however egregious, would support summary judgment for the employer in a subsequent retaliation claim." Id. "[A]n adverse employment action following soon after the employee's engagement in the protected activity cannot establish causation if the employer contemplated the adverse action before the employee's protected activity." Riggiladez v. Harvey, 510 F .Supp .2d 106, 110 (D.D.C. 2007); see also Clark County School Dist. v. Breeden, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

  Here, plaintiff relies upon temporal proximity to rebut the Agency's claim that the poor performance rating was a natural consequence of its investigation, and to assert the kind of immunity to discipline proscribed by Woodruff and rejected in Riggiladez. Ms. Schagh had received complaints about plaintiff's conduct as early as September 2005, and began investigating plaintiff's performance in earnest on March 3, 2006, when she received a scathing indictment of plaintiff's leadership and management. After learning that this investigation had commenced, plaintiff sought pre-complaint counseling from the EEO on March 13, 2006, and did not inform the Agency that she had contacted the IDRC and the EEO office until March 24, 2006, i.e., after Ms. Schagh had already arranged to meet with plaintiff later that very afternoon to discuss her performance and to inform her that a sixty-day performance plan was being

implemented.  Pl. Opp., Exs. 17, 20–21.  In fact, the record shows that the meeting was

scheduled for 2:00 p.m., and plaintiff sent her e-mail message at 2:03 p.m.  Pl. Opp., Ex. 21.

Nearly four months later, as the result of the investigation and discussions with plaintiff, Ms.

Schagh rated plaintiff as minimally successful and plaintiff's WIGI was consequently denied.

Given such circumstances, the temporal proximity of plaintiff's EEO action and the Agency's

adverse employment action do not rebut the Agency legitimate proffer; rather, they more

plausibly suggest the opposite proposition.  As the MSPB's decision states, the timing of

plaintiff's EEO activity "appears to indicate that it was a strike against agency officials after

learning that allegations were made regarding the appellant's performance and that an

investigation had commenced."  MSPB R., Vol. V at 32; see Beckford v. Geithner, 661 F. Supp.

2d 17, 24 (D.D.C. 2009) ("The record reflects that Ms. Beckford's poor performance review was

in progress before her complaint was filed, and thus, the proximity of those events cannot prove

causality."); Burton v. Batista, 339 F. Supp. 2d 97 (D.D.C. 1994) (rejecting plaintiff's suggestion

that temporal proximity suggested a causal link between a minimally successful rating and

plaintiff's EEO action because plaintiff instigated the EEO action only after learning that he ran

the risk of receiving a poor performance review).

The record shows that Ms. Schagh was investigating plaintiff's performance deficiencies

and had developed a sixty-day performance plan before becoming aware of plaintiff's EEO

activity.  MSPB R., Vol. I at 229–30.  No reasonable jury could conclude that Ms. Schagh's

rating of plaintiff as minimally successful on the basis of serious complaints about plaintiff was

in retaliation for plaintiff having engaged in protected activity.[7]

---

[7] Plaintiff suggests that it was discriminatory or retaliatory for the Agency to have directed plaintiff to use personal leave for pre-trial proceedings in federal district court.  Pl. Opp. at 31 n.2.  Precisely the opposite holds true:

B.    The MSPB Decision

Although judicial review of MSPB decisions usually occurs in the United States Court of Appeals for the Federal Circuit, mixed cases that involve both MSPB appeals and allegations of discrimination or retaliation under Title VII are subject to review in federal district court. Vickers v. Powell, 493 F.3d 186, 192 (D.C. Cir. 2007) (citing 5 U.S.C. § 7703(b)).  The district court reviews the discrimination and retaliation claims de novo and reviews the non-discrimination claims on the administrative record.  Hanna v. Herman, 121 F. Supp. 2d 113, 117 (D.D.C. 2000) (citing 5 U.S.C. § 7703(c)); Barnes v. Small, 840 F.2d 972, 979 (D.C. Cir. 1988)). With respect to non-discrimination claims, "an MSPB decision 'must be affirmed unless it is found to be (1) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence.'"  Hanna, 121 F. Supp. 2d at 121 (quoting Hayes v. Dep't of the Navy, 727 F.2d 1535, 1537 (Fed. Cir. 1984)).

First, plaintiff argues that the MSPB's thirty-six page decision was not supported by substantial evidence because the AJ should have weighed the evidence differently and reached a different conclusion.  Plaintiff's position has no merit.

"[I]n assessing whether the MSPB's ruling was supported by substantial evidence, a court is limited to determining 'whether the agency . . . could fairly and reasonably find the facts that it did,' and '[a]n agency conclusion may be supported by substantial evidence even though a

---

As courts within this Circuit and elsewhere have recognized, "[t]here is no express provision in Title VII or its regulations granting an employee the right to administrative leave for judicial proceedings."  Thus, "[w]hile courts allow administrative leave for the trial itself, they routinely deny it for trial preparation."  Adherence to an established agency policy regarding administrative leave also goes a long way in rebutting any inference of discrimination or retaliation that might otherwise be drawn from the denial of paid leave.

Moore v. Summers, 113 F. Supp. 2d 5, 28–29 (D.D.C. 2000) (citations omitted).

19

plausible alternative interpretation of the evidence would support a contrary view.'" <u>Rountree v. Johanns</u>, 382 F. Supp. 2d 19, 32 (D.D.C. 2005) (quoting <u>Robinson v. NTSB</u>, 28 F.3d 210, 215 (D.C. Cir. 1994)). Where an administrative judge's findings are predicated on credibility assessments, such findings "are 'virtually unreviewable[]' and a plaintiff's <u>de facto</u> request for the Court to 're-weigh conflicting evidence' is inconsistent with the reviewing court's function." <u>Id.</u> (quoting <u>Bieber v. Dep't of the Army</u>, 287 F.2d 1358, 1364 (Fed. Cir. 2002)).

The AJ thoroughly reviewed and evaluated all of the evidence presented at the hearing, including the testimony of live witnesses for plaintiff and for the Agency. MSPB, Vol. V. The AJ's discussion of witness testimony encompassed fifteen pages, MSPB R., Vol. V at 9–23; this was followed by several pages of analysis and the weighing of evidence, including the conflicting testimony as well as the credibility of the witnesses, <u>id.</u> at 24–26. Although plaintiff suggests that the AJ should have reached a different conclusion, she has failed to show that the decision was not supported by substantial evidence.

Next, plaintiff complains that the Agency committed a number of procedural and legal errors: it failed to communicate performance standards at the outset of the appraisal period; it failed to conduct a progress review with her; it failed to comply with regulations requiring notification of a negative determination regarding acceptable level of competence and attendant rights to reconsideration and Board appeal; it failed to provide her with guidance and training for new supervisors in accordance with its policy to do so; it violated a statutory requirement to provide her with a signed copy of her performance standards; and it violated a statutory requirement by not providing written notice that her work was not at an acceptable level of competence. Pl. Opp. 44–45; MSPB, Vol. V at 32–39. These assertions too have no merit.

Harmful error is "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one that it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.56(c)(3). The burden is on the appellant in a proceeding before the MSPB to show that any such error "caused substantial harm or prejudice to his or her rights." Id.

The AJ thoroughly reviewed each of plaintiff's arguments and reasonably concluded that plaintiff did not meet her burden of demonstrating that any procedural errors resulted in substantial harm or prejudice that would have led to the grant of a WIGI. MSPB R. Vol. V. at 32–39. Plaintiff was well-acquainted throughout the process and well-in-advance both of the performance reviews and the denials of a WIGI of what the performance standards were, how she was falling short, and what she could do to correct them. Throughout, plaintiff asserted that her performance was outstanding and that any deficiencies were invented by Ms. Schagh as part of her discriminatory conduct. Robinson Dep. 135–40. Nonetheless, once plaintiff responded to suggestions that she did not believe to be necessary, she received a positive performance review and the consequent WIGI. Robinson Dep. at 113, 117; Def. Stmt. Facts ¶ 92. Plaintiff never showed that she performed at an acceptable level of competence in the eyes of the Agency for the relevant time period and, as the AJ noted, no WIGI could have been granted absent such a showing. MSPB R., Vol. V at 32; see 5 U.S.C. § 5335(a); 5 C.F.R. §§ 531.404(a), 531.409(a).

Third, plaintiff argues that the MSPB decision erred by rejecting her affirmative defenses of Title VII discrimination and retaliation, questions this Court reviewed de novo and determined to be lacking in merit.

ORDER

It is ORDERED as follows:

1.     The Court hereby GRANTS defendant's motion for summary judgment; and

2.     This case is dismissed.

DATED this 7th day of April, 2011.

A
_____
Barbara Jacobs Rothstein
U.S. District Court Judge